UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

W & D CRANE RENTALS, LLC                                                                PLAINTIFF

v.                                                                CIVIL ACTION NO. 3:15cv287-DPJ-FKB

BIG IRON CRANE SERVICES, LLC
BIG IRON TRUCKING SERVICES, LLC and
BIG IRON CRANE & TRUCKING  SERVICES, LLC                         DEFENDANTS

ORDER

I.      Introduction

This contract action is before the Court on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [7].  Plaintiff responded, and Defendants filed rebuttal.  Having considered the parties' memoranda and submissions, along with the pertinent authorities, the Court finds that Defendants' Motion to Dismiss should be granted.

II.     Facts and Procedural History

This case involves a payment dispute over leases of heavy equipment between Oklahoma-based Defendants Big Iron Crane Services, LLC; Big Iron Trucking Services, LLC; and Big Iron Crane & Trucking, LLC ("Big Iron") and Mississippi-based Plaintiff W & D Crane Rentals, LLC ("W & D"). Beginning in January 2009, Big Iron and W & D entered nine separate equipment lease contracts.  This civil action arises from two of these contracts ("the Contracts"), both of which contained a Mississippi choice-of-law provision.  Under the Contracts, Big Iron leased cranes delivered from Houston for use in Texas or Oklahoma.

A few months after the parties contracted, W & D mailed Big Iron a letter regarding a $315,000 debt owed on its monthly rental obligation.  When Big Iron did not rectify the debt as

promised, W & D filed the instant civil action in the Circuit Court of Lauderdale County, Mississippi, on January 1, 2015. Pl.'s Compl. [6]. Big Iron removed the action to Federal Court on April 14, 2015, and filed the instant 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction along with supporting memorandum. Defs.' Mot. [7]; Defs.' Mem. [8].

III. Analysis

  A. Motion to Dismiss

"When a non-resident defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the defendant." *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). The district court, sitting in diversity, may assert jurisdiction if: (1) the forum state's long-arm statute confers personal jurisdiction, and (2) exercising jurisdiction does not exceed the boundaries of the Due Process Clause of the Fourteenth Amendment. *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997). Where the district court rules on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff need only make a *prima facie* case that jurisdiction is proper. *Quick Techs., Inc. v. Sage Grp., PLC*, 313 F.3d 338, 343 (5th Cir. 2002).

"In making its determination, the district court may consider the contents of the record before the court at the time of the motion, including 'affidavits . . . .'" *Id.* at 344. In addition, the court "must accept as true [the plaintiff's] uncontroverted allegations, and resolve in its favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). Therefore, this order accepts W & D's factual assertions where dispute exists as well as W & D's record evidence when undisputed.

1.	The Long-Arm Statute

The "Mississippi long-arm statute" states that

> [a]ny nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss. Code Ann. § 13-3-57. As the parties note, three jurisdictional avenues exist under Section 13-3-57: the "tort" prong, the "contract" prong, or the "doing-business" prong. Here, W & D invokes the contract and doing-business prongs. Pl.'s Resp. [13] at 6 9; Defs.' Resp. [16] at 3 7. And while Big Iron disputes their applicability, the Court assumes that at least the contract prong applies and will focus on due process.

2.	Constitutional Due Process

The Court's exercise of personal jurisdiction over a defendant must comport with due process. *Paz v. Brush Eng'r Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006). The due-process inquiry consists of two considerations: (1) the nonresident defendant must have some minimum contact with the forum resulting from its own affirmative act, and (2) maintenance of the suit must comport with "traditional notions of fair play and substantial justice." *Stuart v. Spademan*, 772 F.2d 1185, 1190 91 (5th Cir. 1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Under the first prong of the due-process analysis the minimum contacts test personal jurisdiction may be general or specific. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266,

271 (5th Cir. 2006). W & D relies on specific jurisdiction.

Specific jurisdiction may exist "where there are only isolated or sporadic contacts, so long as the plaintiff's claim relates to or arises out of those contacts." *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 499 (5th Cir. 2012). For the Court to have specific jurisdiction over Big Iron, "due process requires (1) minimum contacts by the defendant purposefully directed at the forum state, (2) a nexus between the defendant's contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction over the defendant be fair and reasonable." *Id.* at 498.

As to minimum contacts,

> [d]ue process first requires that a defendant have sufficient contacts with the forum state such that it "should reasonably anticipate being haled into court there." This requirement can be satisfied by a showing that the defendant "purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there." The defendant's contacts must be more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person."

*Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009); *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 378 (5th Cir. 2002)); *see also Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) ("A plaintiff's or third party's unilateral activities cannot establish minimum contacts between the defendant and forum state." (Citing *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1028 (5th Cir. 1983)).

But the minimum contacts analysis does not stop there; the defendant's contact with the forum state must rest on more than the "mere fortuity that the plaintiff happens to be a resident of the forum." *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985). Thus, "[a] single act

4

directed at the forum state can confer personal jurisdiction so long as that act gives rise to the claim asserted, but merely contracting with a resident of the forum state does not establish minimum contacts." *Moncrief Oil Int'l Inc.*, 481 F.3d at 311 (citations omitted). And, "[a]lthough it has been argued that foreseeability of causing *injury* in another State should be sufficient to establish such contacts there when policy considerations so require, the court has consistently held that this kind of foreseeability is not a 'sufficient benchmark' for exercising personal jurisdiction." *Burger King*, 471 U.S. at 474 (citations omitted). Specific jurisdiction requires more.

> In this case, W & D premises its plea for specific jurisdiction on six primary arguments:
>
> (1) Big Iron reached into Mississippi, seeking out Plaintiffs in order to rent cranes from them;
>
> (2) Big Iron made all contractual payments to Citizens National Bank in Meridian, Mississippi;
>
> (3) Big Iron negotiated with a Mississippi party knowing once consummated it would cause commerce to take place in Mississippi;
>
> (4) All contracts were ultimately consummated in Mississippi;
>
> (5) Big Iron contracted and agreed that Mississippi law would be used to settle any disputes;
>
> (6) Big Iron sent letters to W & D's Mississippi office acknowledging the debt owed.

Pl.'s Opp. [13] at ¶ 23.

W & D's first, third, and fourth arguments all stem from the same premise—that Big Iron knowingly contracted with a Mississippi LLC and sent payment here. This is not sufficient to create specific jurisdiction. As stated, "[m]erely contracting with a resident of the forum state

does not establish minimum contacts." *Moncrief Oil Int'l Inc.*, 481 F.3d at 311 (citations omitted). Big Iron has never stepped foot in Mississippi, and W & D's status as a Mississippi LLC, without more, is "random, fortuitous, [and] attenuated." *ITL Int'l, Inc.*, 669 F.3d at 498 (citations omitted).

Likewise, W & D's unilateral action—consummating or signing the final Contracts in Mississippi—also fails to establish specific jurisdiction. *See Moncrief Oil Int'l Inc.*, 481 F.3d at 311 ("A plaintiff's . . . unilateral activities cannot establish minimum contacts between the defendant and the forum state."); *see also Trustmark v. Sevier Cnty. Bank*, No. 3:13CV527, 2014 WL 4816154 (S.D. Miss. Sept. 24, 2014) (granting Tennessee-based defendant's motion to dismiss where Mississippi-based plaintiff negotiated and signed contract in Mississippi). As specific jurisdiction cannot be established by merely contracting with a resident from the forum state, the Court looks further to determine whether Big Iron "purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there . . . ." *Nuovo Pignone, SpA*, 310 F.3d at 378.

That being said, not all purposely directed activities create purposeful availment. In W & D's second and sixth arguments, it proposes that mailing letters and payments to the forum state shows purposeful availment. Pl.'s Opp. [13] at ¶ 23. But,

> [the Fifth Circuit] has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant.

*Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004); *see also Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986), *cert. denied*, 481 U.S. 1015

6

(1987) ("[T]he exchange of communications between Texas and Oklahoma in the course of developing and carrying out the contract was in itself also insufficient to constitute purposeful availment of the benefits and protections of Texas law."); *see also Stuart*, 772 F.2d at 1194 (finding no specific jurisdiction despite correspondence with forum state plaintiff and agreement to mail checks into the forum state) (citations omitted).

Thus, we finally turn to W & D's fifth argument—that Big Iron agreed to a Mississippi choice-of-law provision. This too fails to establish specific jurisdiction. A choice-of-law provision is not a forum provision. *See Stuart*, 772 F.2d at 1195. In *Stuart*, the Fifth Circuit Court of Appeals explained that "[t]he [choice-of-law] provision [] itself does not evince [Defendant's] anticipation of being hauled into a [particular state's] [c]ourt. "At best, the choice-of-law provision may be said to represent yet one more of several contacts, which taken in their totality are insufficient to support personal jurisdiction." *Id.* The same is true here.

In this case, it is a "mere fortuity" that W & D is located in Mississippi, and "purposeful availment of the privilege of conducting activities within the forum state required by the due process clause cannot be inferred from such a 'mere fortuity.'" *Patterson*, 764 F.2d at 1147 (citations omitted). Moreover, Big Iron did not purposefully avail itself through advertising or other business activities directed to the state of Mississippi. The Oklahoma-based Defendants simply leased cranes located in Texas for use in Texas and Oklahoma from what happened to be a Mississippi-based Plaintiff. These facts fail to establish specific jurisdiction through purposeful availment. Big Iron's motion is due to be granted for lack of sufficient minimum contacts with the forum.

IV.     Conclusion

The Court has considered all of the parties' arguments. Those not addressed would not change the result. For the foregoing reasons, the Court finds that Defendant Big Iron's Motion to Dismiss for Lack of Personal Jurisdiction [7] should be granted, and W & D's claims are dismissed without prejudice to being re-filed in another forum. A separate judgment will be entered under Rule 58 of the Federal Rules of Civil Procedure.

**SO ORDERED AND ADJUDGED** this the 30th day of September, 2015.

                                                        s/ *Daniel P. Jordan III*
                                                     UNITED STATES DISTRICT JUDGE